## HER MAJESTY KAPIOLANI *vs.* S. W. MAHELONA.

### APPEAL FROM DECREE OF COOPER, JUDGE.

HEARING, OCTOBER 3, 1894.    DECISION, APRIL 17, 1895.

BICKERTON AND FREAR, JJ., AND PAUL NEUMANN, ESQ., IN PLACE OF JUDD, C.J., DISQUALIFIED.

A document purported to be a conveyance of land by His late Majesty King Kalakaua to the defendant for a consideration of $5000 on the 15th of November, 1890, in the presence of three witnesses. The evidence showed that the King, his alleged amanuensis, and one of the alleged witnesses, were not at the alleged place of execution of the document at the alleged time thereof; expert witnesses testified that the signature to the document was not that of the King; the alleged grantee took no steps for nearly two years to assert his alleged rights under the document; and the testimony of the alleged grantee and subscribing witnesses was such as to impeach its verity. Held, the document was a forgery and should be cancelled.

OPINION OF THE COURT BY PAUL NEUMANN, ESQ.

In this cause a bill in equity was filed by plaintiff substantially as follows:

"Your oratrix Kapiolani, Queen Dowager, of Honolulu, Oahu, respectfully represents that she is the widow of His late Majesty Kalakaua, and sole devisee under his will duly admitted to probate of all of the real and personal property left by him. That she now is and ever since the decease of said Kalakaua has been in peaceable possession of such real property.

"That S. W. Mahelona, of Honolulu, Oahu, defendant, has in his possession a certain writing purporting to be signed by said Kalakaua, and purporting to be a conveyance from said Kalakaua to said Mahelona for the alleged consideration of five thousand dollars of certain parcels of land, to wit: one-third of the rice land and kula of Kaiwiula, Mokauea,

Kalihi, Oahu, and the fishery Aniani, being the north side of Apana 1, R. P. 6450, and the Apana of Kawaiholo.

" The kula makai of said rice land and the fish pond Alinoho and Auiki.

" One-half of the fishery of Kapakahuki and of Honuku adjoining Kaliawa.

" That said document is dated November 15th, 1890, and is recorded in the Hawaiian Registry of Deeds in Liber 136, folio 214.

" That said document was not acknowledged by said Kalakaua. That since the death of said Kalakaua, to wit, on the 4th day of June, 1892, said defendant by an *ex parte* proceeding, procured a certificate of execution to be annexed to said document, and has caused the same to be recorded in the Registry of Deeds, and has asserted title under the same, and has interfered with the tenants who are in possession of said premises under your oratrix, and threatens to dispossess them.

" That as your oratrix is informed, and believes, and so alleges upon information and belief, said alleged deed is false, fraudulent and forged; that the alleged signature thereto is not the signature of said Kalakaua; that said writing is not the deed of said Kalakaua; that said Kalakaua did not sell any of the land named in said writing to said defendant and did not receive the consideration named in said writing, nor any consideration from the defendant; all of which the defendant well knew.

" That the possession of said forged and fraudulent deed by the defendant constitutes a cloud upon the title of your oratrix; that your oratrix fears that defendant will hereafter set up said deed after witnesses who can disprove the same shall have died, and that defendant may destroy said deed and rely merely on the record thereof, and that he may make conveyances to others not having notice of the fraudulent character of said deed.

" Wherefore your oratrix prays : That said defendant may

be summoned to appear at the time and place to be fixed by Your Honor to answer this complaint.

"That said defendant may be commanded to produce said alleged deed in court, and that the same may be cancelled. That said defendant and his agents, attorneys and servants may be enjoined and restrained from interfering with the possession of the complainant or her tenants of any of the premises named in said alleged deed during the pendency of this suit, and from alleging any title under said alleged deed, and from conveying any title under or by virtue of the same; and from destroying said alleged deed or defacing the signature to the same, and that upon the hearing of this bill of complaint, said injunction may be made perpetual.

"For costs and such other and further relief as may be just."

A decree was made and filed by Cooper, Circuit Judge, on September 1st, 1894, granting the relief prayed for in the bill.

The issue presented raises merely a question of fact. Was the deed of conveyance claimed by defendant to have been executed by His late Majesty King Kalakaua, genuine or not?

This deed purports to have been executed on the 15th day of November, 1890, and it is in the testimony, that the act of signing by the King and the subscribing witnesses took place between the hours of 9 and 11 o'clock A. M. of that day in the King's boat house at the foot of Punchbowl street, the whole business transaction taking up about one and one-half hours.

The King's birthday on that year fell upon the following day, the 16th of November, a Sunday, and it is a matter of general knowledge that the birthday celebration took place on Saturday the said 15th day of November.

The ceremonies consisted, as was customary, of a hookupu, a reception, at which the native friends of the King brought birthday gifts to him. This ceremony lasted until 8 A. M., at which time the King took his breakfast. After breakfast he received the Hale Naua Society until 10 o'clock A. M., when

the Hooulu Lahui Society was received. After this ceremony the King dressed, and at 11 o'clock A. M. received the civil officers of the various departments, Privy Councillors, etc., until 12 M., when the reception of foreign representatives, Consuls and U. S. Naval officers took place, which lasted until about 1 o'clock P. M., after which hour the King left the Palace.

The King left Honolulu on the 25th day of November, 1890, for California, and died there on the 20th of January, 1891.

In the opinion filed in the Circuit Court, the learned Judge descants upon the testimony of the expert witnesses, who were examined as to whether the signature of King Kalakaua is genuine or not, so thoroughly and ably, that little doubt remains of that signature being a forgery, and this conclusion holds good as to the signatures to the receipt for the purchase money and the letter of instructions to the surveyor produced by the defendant.

This assumption of the spuriousness of the signatures is sought to be refuted by the testimony of the witnesses who attested the act of signing; by that of the defendant; that of Isaac Sherwood and incidentally by that of Kaaukai, the surveyor. The testimony of the attesting witnesses is not alone suspiciously contradictory, but so minutely circumstantial, in spite of the lapse of three years, as to impeach its verity.

These witnesses state that they signed in the following order: first Okuu, next Kalaeokekoi, last Zepilino. The name of Okuu being in black ink, the name of Kalaeokekoi appearing in very faint ink, and that of Zepilino in dark ink. Okuu, Zepilino and defendant testify that defendant shook the ink bottle before Zepilino signed, all these witnesses testify that there was but one ink bottle, and all say that the signatures were made with one pen except Sherwood, who says there were two bottles of ink. These statements about a trivial incident made as before mentioned after a lapse of several years, and yet vividly remembered by the witnesses, appear to have been adapted to the circumstance of the

noticeable difference in the ink with which the signatures are shown to have been made.

No proof was offered to corroborate the statement of Mahelona that to make up the amount of $5000, the alleged purchase money, he borrowed $1000 in gold from his son Samuel, a fact apparently easy of proof, and the failure to produce some testimony in that direction makes that statement apocryphal.

It is difficult to reject testimony so direct and so minutely detailed as that, which was presented by the defendant, but from the evidence for plaintiff (in its nature untainted with suspicion) it appears convincingly : first, that between 9 and 11 o'clock A. M. of November 15th, 1890, when the deed is alleged to have been signed by Kalakaua or at any time before at least 1:30 o'clock P. M. of that day, the King was not at his boat house where the transaction is said to have taken place. Second, that Isaac Sherwood, alleged to have been an eye witness to and actor on the occasion of the signing and who wrote the deed, was on that day not in Honolulu, but at Kailua on the island of Hawaii. Third, that Kalaeokekoi, the witness whose signature appears to have been made in ink different from that of the others, was on that day not in Honolulu, but at Kahua on the island of Hawaii. Fourth, that during nearly two years, the alleged grantee of property, for which he claims to have paid $5000, neglected to take the steps necessary to entitle his deed to be recorded, without explanation of such neglect and without notifying the legal representatives of the deceased King of the existence of the deed and of his claim thereunder. Fifth, credible witnesses shown to have been thoroughly familiar with the late King's handwriting and signature, testify unerringly that the signatures to the deed and receipt of the King are spurious. Sixth, that while the defendant claims to have paid $5000 for the property there is uncontradicted testimony that the value of the property approaches the sum of $40,000.

This is sufficient, if evidence can suffice, to prove that the deed in question was never signed by the alleged grantor,

and that the decree of the Circuit Judge must be affirmed, and it is so ordered.

*F. M. Hatch*, for plaintiff.

*C. W. Ashford* and *W. C. Achi*, for defendant.